UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

BRIAN K.,[1]                                    Case No. 3:23-cv-32
          Plaintiff,                            Litkovitz, M.J.

          vs.

COMMISSIONER OF                                 **ORDER**
OF SOCIAL SECURITY,
          Defendant.

Plaintiff Brian K. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

for judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's application for supplemental security income (SSI). This matter is before the

Court on plaintiff's statement of errors (Doc. 14), the Commissioner's response (Doc. 15), and

plaintiff's reply (Doc. 16).

**I. Procedural Background**

Plaintiff protectively filed his application for SSI on May 13, 2021 alleging disability

beginning September 5, 2020[2] due to a herniated disk, degenerative disc disease (DDD), a knee

problem, and a hernia. (Tr. 15, 238). The application was denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* telephone

hearing before administrative law judge (ALJ) William Stanley on May 3, 2022. (Tr. 30-76).

Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. (*Id.*). On June

2, 2022, the ALJ issued a decision denying plaintiff's application. (Tr. 12-25). This decision

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] Plaintiff amended his onset date to May 13, 2021. (Tr. 15, 37).

became the final decision of the Commissioner when the Appeals Council denied review on

December 14, 2022. (Tr. 1-6).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or

mental impairment that can be expected to result in death or that has lasted or can be expected to

last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The

impairment must render the claimant unable to engage in the work previously performed or in

any other substantial gainful employment that exists in the national economy. 42 U.S.C. §

1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

2

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] has not engaged in substantial gainful activity since May 13, 2021, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Plaintiff] has the following severe impairments: degenerative joint disease of the left knee; and degenerative disc disease of the lumbar and thoracic spine with stenosis and radiculopathy (20 CFR 416.920(c)).
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he is limited to occasionally climbing ramps and stairs, but never climbing ladders, ropes, and scaffolds. [Plaintiff] is limited to occasionally stooping, kneeling, crouching, and crawling. He must avoid concentrated exposure to extreme cold and vibration. [Plaintiff] must avoid all exposure to hazards such as heavy, dangerous machinery and unprotected heights.

3

5. [Plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[3]

6. [Plaintiff] was born [in] 1972 . . . and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed. [Plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. [Plaintiff] has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because [plaintiff]'s past relevant work is unskilled (20 CFR 416.968).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[4]

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since May 13, 2021, the date the application was filed (20 CFR 416.920(g)).

(Tr. 18-24).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[3] Plaintiff's past relevant work was as a construction worker II. (Tr. 22, 67). The VE testified that this is classified as a very heavy position, but plaintiff performed it as heavy. (Tr. 67). The ALJ's decision states the reverse. (Tr. 22).

[4] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as bakery racker (18,700 jobs in the national economy), housekeeping cleaner (78,000 jobs in the national economy), and electrical accessories assembler (39,000 jobs in the national economy). (Tr. 24, 68-69). The ALJ stated the number of bakery racker jobs was 187,000. (Tr. 24).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**E. Specific Errors**

Plaintiff asserts two assignments of error. First, plaintiff argues that the ALJ's conclusion regarding his subjective symptoms is not based on substantial evidence. In particular, plaintiff argues that the ALJ did not clearly explain how the record supported his conclusion, and the records referenced in the ALJ's decision—if anything—contradict the ALJ's conclusion. Second, plaintiff argues that the ALJ improperly discounted the opinions of the state agency medical consultants because the ALJ relied on the same, invalid rationales as he did when evaluating plaintiff's subjective symptoms. As such, plaintiff argues that the mandatory analysis of the consistency of these opinions is not supported by substantial evidence. Plaintiff further

argues that the ALJ's bare statement that there is "no support" for the state agency medical consultants' standing and walking restrictions does not satisfy the mandatory *analysis* of the supportability of their opinions. Plaintiff seeks a remand for further administrative proceedings.

       1. <u>Symptom severity</u>

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." Social Security Ruling (SSR)[5] 16-3p, 2016 WL 1119029, at *2. ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49. In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1. To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL

---

[5] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

1119029, at *3. *See also* 20 C.F.R. § 416.929(a); *Jones*, 336 F.3d at 475-76. Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 416.929(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a

conclusion about the intensity, persistence, and limiting effects of an individual's symptoms.");

20 C.F.R. § 416.929(c)(2) ("[W]e will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your

ability to work solely because the available objective medical evidence does not substantiate

your statements.").  Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in
> the regulations for evaluating symptoms.  The determination or decision must
> contain specific reasons for the weight given to the individual's symptoms, be
> consistent with and supported by the evidence, and be clearly articulated so the
> individual and any subsequent reviewer can assess how the adjudicator evaluated
> the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9.  *See also id.* at *7 (noting that the ALJ "will discuss the

factors pertinent to the evidence of record").  At the same time, the ALJ is not required to cite or

discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms

with the record evidence.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009)

("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which

details the factors to address in assessing credibility.  There is no indication that the ALJ failed to

do so.  This claim therefore lacks merit. . . .").

Here, the ALJ offered three reasons for his conclusion that plaintiff's symptoms were not

as severe as alleged:

> There are several reasons why [plaintiff]'s allegations of debilitating symptoms
> are not entirely consistent with the evidence.  First, although [plaintiff] has
> received treatment for the allegedly disabling symptoms, which would normally
> weigh somewhat in [plaintiff]'s favor, the record also reveals that the treatment
> has been generally successful in controlling those symptoms.  Second, [plaintiff]
> described daily activities, which are not limited to the extent one would expect,
> given the complaints of disabling symptoms and limitations.  Third, despite

8

allegations of debilitating limitations, physical examinations, as mentioned above, generally indicated benign findings.

(Tr. 22).

Plaintiff argues that the ALJ failed to link these three rationales to any particular evidence—preventing meaningful appellate review. Plaintiff also argues that the medical records cited elsewhere in the ALJ's decision do not support—and even contradict—these rationales. As such, plaintiff argues that the ALJ's decision mischaracterizes the medical record.

The Commissioner argues in response that the ALJ was not required to specifically discuss each of the 20 C.F.R. § 416.929(c)(3) factors. The Commissioner argues that the ALJ's decision demonstrates that he relied on objective medical evidence, the effectiveness of plaintiff's treatments, the nature and extent of plaintiff's treatments, and plaintiff's activities of daily living. The Commissioner also argues that plaintiff's failure to undergo a surgical procedure "contradicts [his] complaints of disabling symptoms." (Doc. 15 at PAGEID 490). The Commissioner further argues that to the extent that plaintiff's alleged symptoms were consistent with the record, the ALJ accounted for them by assigning an RFC for a restricted range of light work. Finally, the Commissioner argues that plaintiff invites the Court to impermissibly reweigh the evidence.

In reply, plaintiff argues that he does not ask the Court to reweigh the evidence; rather, he argues that the ALJ committed legal error by failing link his symptom-consistency conclusion to any supporting evidence. Plaintiff also argues that the Commissioner misapplies distinguishable case law regarding a claimant's failure to pursue treatment to this case—where the treatment at issue was surgical and not prescribed.

The Court begins by evaluating the ALJ's first stated reason for his decision on the consistency of plaintiff's symptoms with the record: effective treatments.  Earlier in his decision, the ALJ stated that physical therapy and pain medication alleviated some of plaintiff's symptoms and referenced three records.  (Tr. 20).  The first record is one page from a June 29, 2021 orthopedic clinic's record related to plaintiff's left knee pain.  (Tr. 329).  As best the Court can tell, the ALJ relied on the notation by Jeffrey Abbott, D.O., that plaintiff reported "[t]ak[ing] nothing for pain" (*id.*), which says nothing about the effectiveness of medication as treatment. Elsewhere in this same record, Dr. Abbott noted that plaintiff's pain was relieved with only "rest" (Tr. 336), and that plaintiff had "done a home exercise program for the past 6 weeks with no relief" from "significant activity limiting pain in his left knee" (Tr. 338).  Nothing in this record appears to the support the ALJ's reference thereto as supporting successful treatment.

The ALJ next referenced a 22-page record from Wheeling Hospital related to plaintiff's August 30, 2021 outpatient left-knee arthroscopy with no particular page flagged.  (Tr. 20, referring to Tr. 339-60).  As an initial matter, such a blanket reference provides the Court no way to evaluate what, exactly, the ALJ relied upon in rendering his decision.  *See Rogers*, 486 F.3d at 249 (quoting SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996) (superseded by SSR 16-3p) (An ALJ's decision must be "sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to [a plaintiff's] statements and the reasons for that weight.")).[6]  Moreover, from the Court's review of this record, it suggests that plaintiff experienced intractable pain in his knee.  (*See* Tr. 350 (Dr. Abbott's operative report notes that

---

[6] The language in the superseding SSR is substantially similar: "clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017).

plaintiff's "ongoing left knee pain" had been "unresponsive to conservative treatment.")). At most, the "HPI" section of this record notes that "a couple of weeks ago [plaintiff's] left knee had a lot of cracking and popping, which seemed to help decrease the swelling." (Tr. 340). But this does not explicitly address plaintiff's knee pain or limitations. The record contains no information about plaintiff's response to this surgery—other than the fact that he came out of it "in stable condition" (Tr. 351)—or information contradicting plaintiff's testimony that his symptoms returned within two to three months. (Tr. 53).

       Finally, the ALJ referenced a 38-page record from Barnesville Family Health Center with no particular portion highlighted. (Tr. 20, referring to Tr. 364-401). Upon the Court's review of the entire record, it reflects that plaintiff described his back pain as "intractable," and that Toradol "did not help alleviate" his pain. (Tr. 378). (*See also* Tr. 379 (At an April 15, 2021 emergency room visit, plaintiff exhibited "[m]arked diffuse lumbar paraspinal tenderness. . . . Positive left sciatic notch tenderness. . . . Positive bilateral straight leg raise. . . . . . Sensory is diminished to light touch throughout the left lower extremity in a stocking/glove distribution. . . . Gait is antalgic.") (also noting "[i]intractable left lower extremity lumbar radiculopathy" with what was "highly likely to be surgically significant pathology"); Tr. 380 (also noting that muscle relaxants were not helpful); Tr. 384 (Neurosurgeon Nathaniel Amor, D.O., noted on January 31, 2022 that "[advanced spondylotic stenosis with listhesis and severe foraminal stenosis] [wa]s disabling to [plaintiff] despite all manner of conservative therapy."); Tr. 390 (Neurosurgeon Azedine Medhkour, M.D., noted on May 12, 2021 that plaintiff had "no improvement of symptoms" with NSAIDs, muscle relaxers, or three months of physical therapy exercises)).

In response, the Commissioner does not explain to the Court how these records—those actually referenced by the ALJ in his decision—demonstrate that treatment was "generally successful in controlling [plaintiff's] symptoms." (Tr. 22). As such, the Court concludes that this element of the ALJ's decision is not supported by substantial evidence.

The ALJ's second stated reason supporting his symptom-consistency conclusion was plaintiff's activities of daily living. (Tr. 22). The ALJ stated that plaintiff "generally remains able to perform his activities of daily living *without difficulty*." (Tr. 21 (emphasis added)). The ALJ went on to explain that plaintiff "testified that he lives alone, cooks, cares for personal hygiene independently, [and] shops in stores[.]" (Tr. 21). Plaintiff's actual testimony simply does not resemble this summary. Although he lives alone, plaintiff testified that he relied on his niece to do laundry, clean, and provide a significant portion of his meals. (Tr. 56). His own cooking was limited to things that are "easy and quick." (*Id.*). As for personal hygiene, plaintiff testified that showering would often trigger the need to lie down, and that getting dressed could take as long as an hour. (Tr. 57). As for grocery shopping, plaintiff testified that he goes two to three times per year—with the exertion leaving him in bed the entire next day. (*Id.*). The ALJ omitted all of these qualifications. *See Rogers*, 486 F.3d at 248-49 (evaluation of the plaintiff's subjective symptoms was not supported by substantial evidence where "the ALJ's description not only mischaracterize[d] [the plaintiff's] testimony regarding the scope of her daily activities, but also fail[ed] to examine the physical effects coextensive with their performance").

In response, the Commissioner argues that the ALJ did not have to "mention every little detail from the testimony[,]" and that plaintiff impermissibly asks the Court to reweigh the

12

testimonial evidence. (Doc. 15 at PAGEID 492). The Court acknowledges that limitations in activities of daily living will not necessarily equate to a finding of disability. But as the foregoing discussion makes clear, the ALJ's decision misrepresented plaintiff's activities of daily living *as actually described by plaintiff. See Rogers*, 486 F.3d at 248-49. As such, substantial evidence does not support the ALJ's conclusion that plaintiff's activities of daily living were inconsistent with disabling limitations.

The ALJ's third stated reason supporting his symptom-consistency conclusion was plaintiff's benign physical examination findings. (*See* Tr. 21, 22). The ALJ highlighted plaintiff's "full range of motion and no calf tenderness, mild crepitus and tenderness in the left knee, and no joint instability[,]" without referencing particular supporting records. (Tr. 21). Then, after a brief, general acknowledgement that the record reflected some abnormal findings, the ALJ stated that these findings were "offset by generally benign findings . . . and by evidence of effective treatment[,]" followed by a series of record references unaccompanied by further explanation. (*Id.*).

The first of these is a July 1, 2021 record from Miles Jefferis, FNP-BC, showing no kyphosis or scoliosis, tenderness to palpation over lumbar-sacral spine especially on the left leg, a positive left straight leg raise, swollen left knee without erythema or warmth, suprapatellar swelling, mild crepitus, mild tenderness, and no joint instability or enema. (Tr. 325-26). The second record is plaintiff's August 30, 2021 pre-knee surgery examination by Dr. Abbott, at which plaintiff exhibited full range of motion and no calf tenderness. (Tr. 343). Elsewhere in this record, however, are the results of a knee MRI showing a medial meniscal tear in the setting

13

of osteoarthritic change with an associated small effusion (*id.*) and Dr. Abbott's report that plaintiff's pre-operation left knee pain was "unresponsive to conservative treatment" (Tr. 350).

The third is a January 31, 2022 neurosurgery record from Dr. Amor, which references full range of motion in plaintiff's lower extremities and lack of gross abnormalities with his extremities. (Tr. 387).[7] The same record, however, notes antalgic gait; decreased lumbar lordosis; and abnormal motor, sensory, and reflex findings. (Tr. 387, 407). It also includes Dr. Amor's recommendation, based on review of plaintiff's MRI, that plaintiff proceed with a surgical procedure on his back (L4-S1 interbody fusion). (Tr. 384, 404).

The fourth is a May 12, 2021 neurosurgery record from Dr. Medhkour, which reflects some normal musculoskeletal findings but also abnormal gait and station, some left side lower extremity weakness, and limited range of motion. (Tr. 394). The fifth is a June 29, 2021 note from Dr. Abbott, which notes several abnormalities related to plaintiff's left knee and reported left knee pain. (Tr. 400).

In response, the Commissioner points to a reference earlier in the ALJ's decision to a "generally benign" April 2021 emergency record, which reflected only "positive straight leg raise testing at 15 degrees[.]" (Tr. 20, referring to Tr. 299-300). In fact, however, this record— duplicated at Tr. 378-79 and discussed above[8]—is wholly inconsistent with a characterization of "benign." The Commissioner then simply restates the ALJ's symptom-consistency analysis without comment on the particular records he cited and lists a series of records showing benign

---

[7] This record appears twice and the ALJ cites both instances. (*See* Tr. 21, citing Tr. 387 and 407).
[8] *See supra* pp. 11-12 ("intractable" back pain (Tr. 378); "[m]arked diffuse lumbar paraspinal tenderness[,]" "[p]ositive left sciatic notch tenderness[,]" "[p]ositive bilateral straight leg raise[,]" diminished sensory to light touch, and antalgic gait" (Tr. 379)).

14

findings—without explaining where they appear in the ALJ's decision. (*See* Doc. 15 at PAGEID 487). This argument is unpersuasive. *See Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (unpublished table decision) (The court "may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)).

The ALJ's decision fails to coherently explain the substantial evidence supporting his conclusions that plaintiff's physical examination findings were benign and that his treatments were effective. The ALJ's characterization of plaintiff's hearing testimony regarding his activities of daily living is inconsistent with the testimony itself. The only other possible reasons the ALJ offered for his symptom-consistency determination—reasons on which the Commissioner heavily relies for her position—relate to surgical procedures. (*See* Doc. 15 at PAGEID 488-91).

First, the ALJ implied that plaintiff's knee surgery was successful because there is no record of "further follow-up or treatment. . . ." (Tr. 21). But the ALJ failed to acknowledge plaintiff's testimony that his pain returned to pre-surgery levels within a few months. (Tr. 53). While an ALJ is not required to explicitly resolve all conflicting record evidence, his decision on the whole must demonstrate that he "implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)).

15

Given this omission, and other shortfalls in the decision discussed above, the Court cannot say the ALJ even implicitly resolved this conflict.

Second, the ALJ noted that plaintiff "refused" a "*recommended . . .* L4-S1 interbody fusion" because plaintiff's family members had experienced bad outcomes with surgery. (Tr. 21 (emphasis added), referring to Tr. 403 (Dr. Amor)). The Social Security regulations provide that a claimant "must follow treatment prescribed by [his] medical source(s) if this treatment is expected to restore [his] ability to work" and that the agency will not award benefits if such treatment is not followed without good reason. 20 C.F.R. §§ 416.930(a), (b). The Sixth Circuit has made clear, however, that this provision applies only to situations in which the treatment is prescribed—as opposed to merely recommended—and would restore the ability to work—as opposed to merely improving a condition. *Fraley v. Sec'y of Health & Hum. Servs.*, 733 F.2d 437, 440 (6th Cir. 1984) ("It is not the claimant's burden to undergo any and all surgical procedures suggested by his physician lest he is barred from receiving disability benefits.").

In *Young v. Comm'r of Soc. Sec.*, the court found that the ALJ had "improperly rejected Plaintiff's complaints of disabling pain" where it appeared the ALJ had relied on a refusal to undergo back surgery. No. 08-14475, 2009 WL 4638951, at *7, 9 (E.D. Mich. Dec. 2, 2009). The Court concluded that this was improper because there was no evidence that the surgery was prescribed or would restore the plaintiff's ability to work. *Id. See also McCrary v. Comm'r of Soc. Sec. Admin.,* No. 1:20-cv-238, 2022 WL 4597490, at *8 & n.5 (E.D. Tenn. Mar. 31, 2022) (finding error in the ALJ's RFC determination and citing *Fraley* and other cases) ("What makes the ALJ's failure to discuss the injections particularly problematic is that she then emphasizes

Claimant's failure to pursue spinal surgery."); *Vanderbush v. Comm'r of Soc. Sec.*, No. 09-11360, 2010 WL 3038027, at *8 (E.D. Mich. May 10, 2010) (The ALJ's subjective-symptom evaluation was not based on substantial evidence where it relied, at least in part, on the plaintiff's decision to decline back surgery but there was no evidence that such surgery would restore the plaintiff's ability to work) (report and recommendation), *adopted*, 2010 WL 3038041 (E.D. Mich. July 30, 2010).

To be sure, an ALJ is not prohibited from considering a claimant's failure to undergo recommended surgery as part of his comprehensive and supportable analysis of a claimant's subjective symptoms. *See Green v. Comm'r of Soc. Sec.*, No. 5:17-cv-2366, 2018 WL 6524381, at *9 (N.D. Ohio Oct. 17, 2018) (the court upheld the ALJ's symptom-consistency analysis, noting that the ALJ had considered the plaintiff's failure to undergo surgery *and several other* treatments alongside evidence of, *inter alia*, symptom management with conservative treatment, mild symptoms, varied activities of daily living) (report and recommendation), *adopted*, 2018 WL 6523136 (N.D. Ohio Dec. 12, 2018); *Young v. Berryhill*, No. 3:17-cv-395, 2018 WL 1914732, at *7 (W.D. Ky. Apr. 23, 2018) (The plaintiff's election against surgery "was never relied on by [the ALJ] as a basis on which to deny [the plaintiff's] claim for DIB[,]" and the ALJ therefore did not err by considering it as part of his symptom-consistency analysis). As explained above, however, the other reasons offered by the ALJ to support his symptom-consistency analysis are not supported by substantial evidence. As such, the plaintiff's failure to pursue a recommended (not prescribed) surgery cannot, alone, serve as a proper basis to find his subjective symptom report inconsistent with the record.

The Commissioner quotes *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841 (6th Cir. 2004) for its statements that "when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that he claimant will seek examination or treatment" and that "a failure to do so may cast doubt on a claimant's assertions of disabling pain." *Id.* at 846. The Commissioner omits the very next sentence of the opinion, however, which acknowledges that "[i]n some circumstances, . . . a failure to seek examination or treatment may say little about a claimant's truthfulness." *Id.* In addition, the plaintiff in *Strong* failed to undergo *any* examination or treatment *at all* during the relevant time period, and a surgical procedure was not at issue. *Id. Strong* therefore does not undercut the conclusion drawn from the surgery-specific cases cited above.

The Commissioner also cites *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) in support of her argument that "the evidence of limited treatment, and the failure to follow the recommended course, *no matter for what reason*, contradicts Plaintiff's complaints of disabling symptoms." (Doc. 15 at PAGEID 490 (emphasis added)). The *Walters* court, however, did not address a claimant's failure to undergo a recommended surgical procedure. Instead, it considered a case in which the claimant's "medical records contain[ed] very little objective, physical, or clinical evidence of disabling severity, and no medical evidence ha[d] been presented suggesting that [the claimant]'s medical conditions c[ould] reasonably be expected to produce the alleged disabling pain." *Walters*, 127 F.3d at 531. This case is not persuasive. The Commissioner also cites *Webster v. Sec'y of Health & Hum. Servs.*, 770 F.2d 168 (6th Cir. 1985) (unpublished table decision), but this case concerned a "refusal to follow . . .

18

*prescribed . . . treatment*" that was not surgical in nature. *Id.* at \*1 (emphasis added). Thus, it is also unpersuasive.

For the foregoing reasons, the ALJ's decision to discount the consistency of plaintiff's subjective symptoms is not based on substantial evidence. Plaintiff's first assignment of error is sustained.

### 2. State agency medical consultants' opinions

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 416.920c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions. *Id.* The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 416.920c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). With respect to the

supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 416.920c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

At the initial level, W. Scott Bolz, M.D., an orthopedic specialist, included a detailed review of medical records—including plaintiff's back and knee imaging and knee surgery. (Tr. 79-80). Dr. Bolz concluded that plaintiff's statements about his symptoms were "[f]ully consistent" with his review of the record. (Tr. 80). Dr. Bolz found plaintiff limited to a less than full range of light work; in particular, he found plaintiff limited to standing and/or walking for a total of four hours and sitting for a total of about six hours in an eight-hour workday. (Tr. 81).

On reconsideration, Mehr Siddiqui, M.D., a neurology specialist, concurred with this assessment. (Tr. 85-89).

> The ALJ evaluated these opinions as follows:
>
> The State agency medical consultants determined that [plaintiff] has the residual functional capacity to perform work at the light exertional level with additional limitations and a reduction in standing and walking (Exhibits 2A, 4A).  As discussed throughout this decision, [plaintiff] is appropriately limited to less than the full range of light work in light of his severe physical medically determinable impairments.  The medical evidence of record supports [plaintiff]'s persisting low back and left knee pain.  However, treatment was generally conservative and routine.  The knee surgery appears to have at least somewhat stabilized symptoms, as there is no further treatment in the record.  Although back surgery was recommended, [plaintiff] has not opted for that treatment.  Despite pain and residual symptoms, [plaintiff] remains able to perform his activities of daily living.  For these reasons, the und[ersigned] finds these determinations partially persuasive.  While there is support in the record for the light exertional level, there is no support in reductions in standing and walking.

(Tr. 21).

Plaintiff argues that the ALJ used the same three rationales to discount the state agency medical consultants' opinions as he used to discount the consistency of plaintiff's symptoms with the record.  These rationales, plaintiff argues, are not substantial evidence upon which to support the required consistency analysis under 20 C.F.R. § 416.920c(c)(2) for the reasons discussed above.  In addition, plaintiff argues that the ALJ dismissed the state agency medical consultants' opinions that plaintiff was limited in standing and walking with no explanation whatsoever.  Plaintiff points to a number of medical records consistent with this particular finding and argues that the comprehensive review by these consultants demonstrates the supportability of their opinions.

The Commissioner argues in response that the ALJ was not required to use "magic words" to articulate his supportability and consistency analyses. (Doc. 15 at PAGEID 494). The Commissioner argues that the Court must look to the ALJ's decision as a whole and argues that plaintiff asks the Court to impermissibly reweigh the persuasiveness of the state agency medical consultants' opinions. The Commissioner urges the Court to excuse the lack of clearly delineated supportability and consistency analyses because of the nature of state agency review. Finally, the Commissioner argues that the ALJ was not required to adopt the opinions of the state agency medical consultants wholesale, where he found the opinions only partially persuasive and explained the reasons for discounting some portions (i.e., the standing and walking restrictions).

In reply, plaintiff distinguishes case law cited by the Commissioner suggesting that the ALJ is not required to clearly articulate and delineate between his supportability and consistency analyses in the context of state agency consultant opinions. Plaintiff also argues that the Commissioner offers post-hoc rationalizations for why the ALJ rejected the state agency consultants' opinions on plaintiff's standing and walking limitations and reiterates his position that the ALJ did not support this element of his decision with any evidence.

The Court notes initially that the ALJ failed to point to particular records that support his analysis of the state agency medical consultants' opinions. *See Peters v. Comm'r of Soc. Sec.*, No. 1:19-cv-827, 2021 WL 615234, *4 (S.D. Ohio Feb. 17, 2021) ("[A]n ALJ must build an accurate and logical bridge between the evidence and h[is] conclusion.") (citing *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)). It appears, however, that the ALJ evaluated the consistency factor in terms of what he considered plaintiff's conservative, routine

treatment; stabilized symptoms; failure to undergo surgery; and ability to perform activities of daily living.  (*See* Tr. 21).  These rationales are not supported by substantial evidence for the reasons discussed at length above.  *See* 20 C.F.R. § 416.920c(c)(2) ( "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." ).

Otherwise, the only explanation the ALJ provides for his assessment of these opinions is that their standing/walking limitation had "no support. . . ."  (Tr. 21).  To the contrary, however, Dr. Bolz and Dr. Siddiqui based this limitation on plaintiff's "lumbar spinal stenosis & left knee pain[,]" and cited the following:

> 6/2021: MRI L spine shows significant disc narrowing & endplate degenerative change, w/ slight L5 anterolisthesis at L5-S1.  Multilevel facet degenerative changes particularly in the lower lumbar region.  Disc protrusion laterally on the left at L4-5 w/ foraminal encroachment and root impingement.  Facet hypothrophy & disc protrusion w/ left lateral recess narrowing at L5-S1.
>
> 4/2021: XR left knee shows joint narrowing & mild spurring.
> 8/2021: L knee surgery.

(Tr. 81, 87-88).   The Commissioner appears to argue that plaintiff's disagreement with the ALJ's conclusion invites the Court to reweigh the evidence.  The Commissioner points to *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) for her argument that "as long as substantial evidence supports the ALJ's conclusion that a medical opinion was unpersuasive, any arguments as to evidence supporting other conclusions the ALJ could have made 'are a veiled attempt to have [the Court] reweigh the evidence,' which the Court may not do."  (Doc. 15 at PAGEID 495 (quoting *id.*)).  But as the Court understands it, plaintiff's argument is not that the Court should look to other evidence and come to a different

conclusion from the ALJ. Rather, plaintiff's argument is that the ALJ's assertion that the state agency consultants' opinions had "no support" is so perfunctory and contrary to the record as to not qualify as the mandatory supportability analysis at all. The Court agrees with plaintiff. As articulated by another magistrate judge in this district, the issue in *Nassar* was distinct from the issue here, which is whether the ALJ had met the regulatory requirements for review of medical opinions. *John F. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-00260, 2023 WL 4759127, at *6 (S.D. Ohio July 26, 2023) ("The plaintiff [in *Nassar*] argued that the ALJ applied 20 C.F.R. § 404.1520c incorrectly—not because the ALJ failed to address supportability or consistency, but because several factors supported the physician's opinion. . . .").

The Commissioner also argues that the lack of a clear supportability analysis should be overlooked because of the "'inherent lack of clear delineation between supportability and consistency' when an ALJ evaluates state agency findings, which are based on 'a holistic review of the medical evidence' compared to the 'more clearly distinguished lines' when the ALJ evaluates other medical opinions." (Doc. 15 at PAGEID 496-97 (quoting *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, at *6 (S.D. Ohio Mar. 24, 2023)). The Court finds a subsequent opinion from this District, declining to adopt this rationale, more persuasive. In *Elaine S. v. Comm'r of Soc. Sec. Admin.*, the Court found that it was error to conclude that an ALJ's decision as to the consistency of a state agency opinion inherently included a discussion of its supportability, because such reasoning "essentially retrofits the ALJ's discussion with two things it lacks: (1) the regulation's distinction between supportability and consistency; and (2) the regulation's articulation directive to ALJs that requires them to 'explain how [he or she]

24

considered the supportability and consistency factors for a medical source's medical opinions.'" No. 3:22-cv-240, 2023 WL 6290070, at *3 (S.D. Ohio Sept. 27, 2023) (quoting 20 C.F.R. § 416.920c(b)(2)).

In any event, even if the Court were to conflate the two analyses here, it does not benefit the Commissioner; the ALJ's consistency analysis is not supported by substantial evidence for the reasons discussed above. In addition, the error is not harmless. *See Rabbers*, 582 F.3d at 651; *Elaine S.*, 2023 WL 6290070, at *3-4 (finding that the supportability-analysis error was harmless because the plaintiff did not point to evidence contrary to the ALJ's conclusion regarding the state agency opinion). Plaintiff has demonstrated that state agency consultants supported their opinion by reference to specific clinical findings.

For the foregoing reasons, the ALJ's analysis of the state agency medical consultants' opinions is not based on substantial evidence. This assignment of error is sustained.

## III. Conclusion

Based on the foregoing, plaintiff's statement of errors (Doc. 14) is **SUSTAINED**, and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Order.

Date:   12/12/2023

Karen L. Litkovitz
Chief United States Magistrate Judge

25